**NOT FOR PUBLICATION**                                                                               *CLOSED*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
JOANN LILLI and VINCENT LILLI,              :
                                            :
            Plaintiffs,                    :      Civil Action No. 04-237 (SRC)
                                            :
            v.                             :
                                            :
THE UNITED STATES OF AMERICA                :      **OPINION AND**
and JOHN DOES 1-20,                         :      **ORDER**
                                            :
            Defendants.                    :
_____:

**CHESLER, U.S.D.J.**

### INTRODUCTION

Plaintiffs JoAnn Lilli and Vincent Lilli bring this action for personal injury and property damage against Defendant United States of America under the Federal Tort Claims Act ("FTCA"), pursuant to 28 U.S.C § 1346(b). Plaintiff contends that one of Defendant's employees, in the course of employment, drove his car negligently, causing it to collide with Plaintiffs' vehicle. Plaintiffs contend that they were injured by the accident and seek compensatory damages, attorney's fees, and costs of suit. The parties do not dispute the liability of the United States; only issues of causation and damages are contested. A bench trial limited to causation and damages was held on October 26, 2006. Upon hearing the evidence presented at trial, this Court finds that Defendant is liable to Plaintiffs for damages in the amount of $25,000, and judgment will be entered in favor of Plaintiffs in the amount of $25,000.

BACKGROUND

The parties do not dispute the negligence of the United States employee driving the car that collided with Plaintiffs' car, or that this caused injury to JoAnn Lilli. At issue is what injuries were caused and what damages should be awarded. Plaintiffs contend that Mrs. Lilli sustained an injury qualifying her for exemption from N.J.S.A. § 39:6A-8(a), the New Jersey limitation on lawsuit threshold, allowing her to sue for noneconomic damages, the pain and suffering caused by the accident. Plaintiffs contend as well that, because Mrs. Lilli's injury exempts her from the limitation on lawsuit threshold, they may recover for property damage (loss of their vehicle) and for the injuries to Mr. Lilli (loss of consortium and negligent infliction of emotional distress on a bystander). Defendant argues that Mrs. Lilli did not sustain an injury qualifying her for exemption from N.J.S.A. § 39:6A-8(a), and that the limitation bars Plaintiffs from recovering.

LEGAL STANDARDS

A.  **The New Jersey limitation on lawsuit threshold.**

The liability of the United States under the FTCA is a matter of state law. Molzof v. United States, 502 U.S. 301, 305 (1992). N.J.S.A. § 39:6A-8(a) provides that a vehicle's owner or operator may be exempt from tort liability under certain circumstances; this is known as the limitation on lawsuit threshold. Juarez v. J.A. Salerno & Sons, Inc., 185 N.J. 332, 333 (N.J. 2005). This optional limitation, when elected by the insured, exempts an owner or operator from tort liability for noneconomic loss as a result of bodily injury, "unless [the injured party] has sustained a bodily injury which results in death; dismemberment; significant disfigurement or significant scarring; displaced fractures; loss of a fetus; or a permanent injury within a reasonable

2

degree of medical probability, other than scarring or disfigurement." N.J. Stat. Ann. § 39:6A-8(a). "'Noneconomic loss' means pain, suffering and inconvenience." N.J. Stat. Ann. § 39:6A-2(i). "[A]n automobile accident victim who is subject to the threshold and sues for noneconomic damages has to satisfy only one of [these] six threshold categories and does not have the additional requirement of proving a serious life impact." DiProspero v. Penn, 183 N.J. 477, 481-482 (N.J. 2005). "[A] singular injury meeting the tort threshold will permit a claimant to sue for noneconomic loss causally related to all injuries sustained in an automobile accident." Puso v. Kenyon, 272 N.J. Super. 280, 293 (N.J. Super. Ct. App. Div. 1994).

      **B.     Interpretation of "significant scarring."**

The legislature added the "significant scarring" provision to the statute in 1998. The only New Jersey appellate case to construe this provision is Soto v. Scaringelli, 384 N.J. Super. 431, 438 (N.J. Super Ct. App. Div. 2006). The Soto court interpreted "significant scarring" to invoke the standard for scarring as permanent disfigurement that was used by the New Jersey Supreme Court in Gilhooley v. County of Union, 164 N.J. 533, 544 (N.J. 2000). In Gilhooley, the Court relied on a test of disfigurement based on whether a scar impaired the victim's appearance, "rendering her 'unsightly,' 'misshapen' or 'imperfect.'" Id. (quoting Falcone v. Branker, 135 N.J. Super. 137, 145 (N.J. Super. Ct. Law Div. 1975)). Following Gilhooley, the Soto court made the factual determination of whether scarring was significant by inquiring into whether the scar impaired the victim's appearance, and rendered her unsightly, misshapen or imperfect. Soto, 384 N.J. Super. at 438.

    **C.**    **New Jersey law of bystander emotional distress claims**

Emotional distress damages may be recoverable by a bystander under the test developed by the New Jersey Supreme Court in Portee v. Jaffee, 84 N.J. 88, 101 (N.J. 1980). This cause of action requires proof of the following elements:

> (1) the death or serious physical injury of another caused by defendant's negligence; (2) a marital or intimate, familial relationship between plaintiff and the injured person; (3) observation of the death or injury at the scene of the accident; and (4) resulting severe emotional distress.

Id.

## THE EVIDENCE AT TRIAL

    **A.**    **Testimony of Vincent Lilli**

After testifying on the circumstances leading up to the accident, Mr. Lilli described the collision and how his wife hit the car's windshield. (Tr. 12:15.) "I looked and blood was pumping out of her head and I tried to make light of it because she was getting hysterical." (Tr. 12:23.) As they waited for emergency personnel, his wife was crying, upset, and "almost passing out." (Tr. 14:2-3.) They took Mrs. Lilli to the hospital.

By the time Mr. Lilli arrived home from the hospital that evening, his concerns about the seriousness of his wife's condition had calmed down. (Tr. 17:1-5.) He knew that this was not a life-threatening injury after he saw the surgeon at the hospital, an hour or two after the accident. (Tr. 38:6-15.)

Mr. Lilli had been driving a "restored" 1979 Oldsmobile Delta 88 which had been repainted, had had its chrome "redone," and was a "real good solid running car" with 90,000 miles on the odometer. (Tr. 17:15-22.) Mr. Lilli has been in the business of restoring

automobiles for almost 30 years, and has bought and sold cars at auctions. (Tr. 20:3-9.) Based on this experience, Mr. Lilli opined that the value of the car was $5,000 on the day of the accident. (Tr. 20:18.) On cross-examination, Mr. Lilli said that he had received offers on the car for $5,000. (Tr. 36:16.) The car was totaled after the accident. (Tr. 36:21.) The book value of the car at the time of the accident was $500. (Tr. 39:12.) Mr. Lilli obtained a repair estimate of $4500 or $4800. (Tr. 39:5-9.)

In the days and weeks after Mrs. Lilli came home from the hospital, she was "in a lot of pain with her shoulder." (Tr. 21:18.) She was nervous in the car when he took her to the doctor to have her laceration stitches removed. (Tr. 22:5-9.) She had problems sleeping "for quite a while" following the accident. (Tr. 23:10-14.) As to physical activities involving the shoulder, neck, and back, she is "still not a hundred percent." (Tr. 23:22-24:2.) When she cleans, she will do light dusting, but not vacuuming or carrying a basket of clothing. (Tr. 24:6-9.) She will shop for small grocery items, but not large amounts. (Tr. 24:12-14.)

Mrs. Lilli had been treated for cancer prior to the accident, and this had limited her physical activities. (Tr. 24:18-23.) She had surgery on her stomach in 1997 as part of the cancer treatment. (Tr. 34:16-17.) She had returned to some of her household and social activities prior to the accident. (Tr. 25:5-9.) She was able to perform activities that were "light" but not "heavy" during the period after the cancer surgery and prior to the accident. (Tr. 33:14-25.)

Mrs. Lilli became depressed after the accident. (Tr. 25:24.) She would look in the mirror and cry over her appearance. (Tr. 26:4-7.) The period of greatest upset lasted for six months following the accident, following which it gradually declined. (Tr. 27:1-6.) She had occasional nightmares during this time. (Tr. 28:14-29:3.) For a period of time, she did not want to

5

socialize. (Tr. 29:8-14.) During these six months, there was no physical and emotional marital relationship. (Tr. 28:7-11.) By a year after the accident, the marital relationship had returned to normal "a little bit." (Tr. 29:4-7.) Even beyond those initial six months, she has been self-conscious about her appearance. (Tr. 26:19.)

Mrs. Lilli continues to be nervous when driving in a car. (Tr. 31:17-24.) From time to time, she complains of headaches on the side of the head with the scar. (Tr. 32:1-6.)

On cross-examination, Mr. Lilli stated that his wife's left shoulder was injured in the accident. (Tr. 32:14-16.) Since the injury, she has favored her right shoulder, which now bothers her as well. (Tr. 32:21-23.) She stopped treatment for her left shoulder within three months of the accident. (Tr. 33:1-5.)

There were no expenses incurred for hiring anyone to perform household services that Mrs. Lilli was unable to do after the accident, as Mr. Lilli did everything. (Tr. 36:2-8.)

### B.  Testimony of JoAnn Lilli

Mrs. Lilli stated that she had had surgery for bile duct cancer in 1997. (Tr. 42:18.) Just prior to the accident, she had been very happy in her life, feeling that even though she "was not all over my cancer," she could move on with her life. (Tr. 43:7-9.) Prior to the car accident, when she was a passenger in her husband's car, she would have been upset if someone changed lanes in front of them without signaling, but that condition worsened as a result of the accident. (Tr. 43:10-25.)

The impact from the collision injured her forehead, neck, and shoulder. (Tr. 44:22-23.) She hit the windshield with her forehead. (Tr. 45:5-7.) She recalls screaming, and blood pouring over her face. (Tr. 45:13-14.) It took five or ten minutes for rescuers to remove her from the car,

but it felt like an eternity. (Tr. 46:3-8.) As she was being taken to the hospital, she thought she was going to die from losing all the blood. (Tr. 47:4-11.) She cried hysterically. (Tr. 48:7.) She felt "sheer panic" when she was at the hospital and someone changed the dressing on her forehead wound. (Tr. 49:3-5.) Her forehead was sutured and, despite the use of novocaine for anaesthesia, it was extremely painful. (Tr. 51:16-23.) She screamed during the suturing. (Tr. 52:3.) The later removal of the sutures was also very painful. (Tr. 66:11.)

After the accident, it was harder to leave the house because people stared at her and also asked questions about the injury. (Tr. 54:9-16.) She refrained from leaving the house for a year. (Tr. 60:19-21.) She had lost her hair during the cancer chemotherapy and it was just starting to grow back, but her hair was shaved after the accident. (Tr. 54:16-24.) She did not want to leave the house with her head shaved. (Tr. 55:1-2.) As time has gone by, Mrs. Lilli has become able to socialize again. (Tr. 61:2-5.)

In the years after her cancer, Mrs. Lilli had stopped driving, but she had resumed driving in 2001, although not at the level she had done previously. (Tr. 56:11-18.) After the accident, she was initially afraid to get back in the car. (Tr. 57:1-3.) When she had to travel in the car, she felt "sheer panic." (Tr. 55:3-5.) She eventually returned to driving, although she is still nervous in a car. (Tr. 57:22-58:13.) She did not drive for a period of three or four months. (Tr. 58:19.)

Mrs. Lilli did not suffer from sleep difficulties or nightmares prior to the accident. (Tr. 61:8-17.) Just after the accident, recollections of the accident prevented her from sleeping. (Tr. 61:18-22.) This lasted for a few months until she received treatment from Dr. Karan. (Tr. 62:4-9.) She had never previously received any psychological treatment. (Tr. 62:15-17.) Concerns about driving led her to seek psychological help. (Tr. 63:5-7.)

Mrs. Lilli went to Dr. Andronaco for treatment of her right shoulder.[1]  (Tr. 63:11-14; 65:13.)  Dr. Andronaco sent her for physical therapy, and she went for a few months.  (Tr. 63:23-24; 64:5.)  She has had no further problems with her shoulder.  (Tr. 64:8-13.)

For a long time after her sutures were removed, Mrs. Lilli experienced tingly and numb sensations in the area around the scar.  (Tr. 66:15-25.)  This condition is now very slight, and the area affected is slowly decreasing.  (Tr. 68:24; 69:7.)  The remaining sensitivity does, however, cause discomfort if she tries to sleep on her right side.  (Tr. 71:8-20.)  The scar was very red for the first nine months.  (Tr. 67:9.)  It has now faded a little.  (Tr. 67:16.)  She has never seen a neurologist for treatment of neuralgia of the scalp.  (Tr. 81:21-23.)  The accident also caused a permanent dent to her forehead.  (Tr. 67:21.)  There has been no subsequent change to the dent.  (Tr. 70:9-11.)  A "chunk" of hair that used to grow in the area of the scar has never grown back.  (Tr. 70:12-17.)

Initially, after the accident, Mrs. Lilli could not play with her granddaughter the way she was accustomed to, but she has since been able to resume her activities with her granddaughter.  (Tr. 72:16-20; 73:9-11.)

Mrs. Lilli's cancer had interfered with her physical relationship with her husband, and she had not resumed a normal physical marital relationship with him by the time of the accident.  (Tr. 74:17-25.)  After the accident, their relations were interrupted for "a while," but resumed within six months.  (Tr. 75:3-9.)

---

[1] On cross-examination, Mrs. Lilli admitted that her statement that her right shoulder was injured was incorrect; it was her left shoulder.  (Tr. 77:21.)

### C. The medical reports

The parties stipulated to the submission of medical reports, rather than have live testimony from physicians, and the reports were admitted into evidence at trial.

Plaintiffs submitted the August 11, 2004 expert report of Michael Fiorillo, M.D. (Pls.' Ex. B.) Dr. Fiorillo, a plastic surgeon, stated that he treated JoAnn Lilli for a laceration of her forehead on February 20, 2003. (Id. at 1.) As of the date of the report, Mrs. Lilli continued to complain of numbness to the right scalp and pain when it rains. (Id. at 2.)

Plaintiffs submitted the October 5, 2003 expert report of Val Karan, Ph.D. (Pls.' Ex. C.) Dr. Karan, a clinical psychologist, stated that he treated JoAnn Lilli in six sessions between April 10 and May 19, 2003. (Id. at 1.) Dr. Karan gave Mrs. Lilli a diagnosis of posttraumatic stress disorder. (Id. at 2.) By the end of treatment, Mrs. Lilli was able to drive again and felt much better. (Id.)

Defendant submitted the November 3, 2004 expert report of Howard L. Blank, M.D. (Def.'s Ex. G.) Dr. Blank, an orthopedist, evaluated JoAnn Lilli on November 2, 2004. (Id. at 1.) Dr. Blank concluded that the accident of November 20, 2003 had caused the following injuries: 1) laceration of the forehead; 2) low-grade tendinitis of the left shoulder; and 3) a minor cervical sprain. (Id. at 3.) Dr. Blank did not find any evidence of permanent injury from the accident to either the left shoulder or the spine and stated that the left shoulder was asymptomatic. (Id. at 4.)

Defendant submitted the January 12, 2005 expert report of Steven M. Simring, M.D. (Def.'s Ex. H.) No information on Dr. Simring's medical specialization or training accompanied the report. Dr. Simring evaluated JoAnn Lilli on November 17, 2004. (Id. at 1.) Dr. Simring

9

concluded that "JoAnn Lilli was frightened by the automobile accident and experienced mild emotional symptoms of anxiety and depression, lasting less than a year." (Id. at 6.)

## DISCUSSION

This Court must determine whether injuries were caused by the accident, and then the amount of compensatory damages to be awarded, in four areas:

1.  <u>JoAnn Lilli's pain and suffering</u>

The Court observed Mrs. Lilli's scar when she testified at trial. The scar impairs Mrs. Lilli's appearance, rendering her unsightly, misshapen, or imperfect. Because Mrs. Lilli has demonstrated significant scarring, her action for damages falls within an exemption to N.J.S.A. § 39:6A-8(a), the limitation on lawsuit threshold. The Court then considers all of the evidence of Mrs. Lilli's damages due to pain and suffering.[2]

Although the Court finds the scarring significant, the Court observes as well that the scar appears at the hairline and that it has not become keloid, which would be more disfiguring. The Court concludes that, while the scar does constitute significant scarring, under many, if not most, circumstances, the scar would not be noticed by the casual observer and is amenable to concealment using appropriate hairstyling techniques.

The evidence shows that the accident produced physical pain and suffering (mild skin discomfort around the scar which continues, temporary pain from the soft tissue damage that has passed), and that Mrs. Lilli experienced emotional distress at the time of the accident and during

---

[2] The Court finds that the other soft tissue injuries, while undoubtedly causing pain and suffering, would nevertheless be insufficient to meet the threshold. Of course, since the requirement for exemption from the limitation on lawsuit threshold has been met, the Court will consider all the pain and suffering experienced as a result of the accident.

the period following it. The Court determines that Mrs. Lilli should be compensated $22,000 for all of the pain and suffering.

  2.  Vincent Lilli's emotional distress

Under Portee, Plaintiffs must prove that viewing his wife's injury caused Vincent Lilli to experience severe emotional distress. Plaintiffs did not prove that Vincent Lilli experienced severe emotional distress.

  3.  Vincent Lilli's loss of consortium

The evidence presented at trial established that Mrs. Lilli's previous illness had interfered with the couple's physical relationship, which was still diminished just prior to the accident. The accident did cause a further short-lived interference, which was minimal. The Court determines that Mr. Lilli should be compensated $2,500 for the loss of consortium.

  4.  Property damage

The evidence presented at trial provided two different valuations for the car, which was a total loss: $500, based on the book value, and $5,000, based on Vincent Lilli's opinion of its value. The Court discounts Mr. Lilli's opinion on several grounds. First, although Mr. Lilli testified that he had thirty years of experience in the business of restoring, buying, and selling cars, thus suggesting some expertise in appraising older vehicles, Plaintiffs presented nothing by way of testimony or documentation to support his opinion of the value. He claimed that he had received some offers of $5,000 for the car, but stated no details of who made an offer and when one was made. Nor did he offer examples of comparable vehicles with low book values and high auction values – a kind of evidence that, in his line of work, should have been easy to obtain. The Court thus did not find his lay opinion of the car's value credible. Second, the Court did not

11

accept the logic of Mr. Lilli's valuation.  Mr. Lilli took the position that his vehicle had a much higher value than the book value – ten times greater – because of its superior condition.  Yet the book value of a car takes the car's condition into account.  Mr. Lilli did not present evidence that his car was of a condition so far superior to that considered by the appraisers who produce the Blue Book that the book value could not fairly capture the superior condition.  Third, Mr. Lilli presented no evidence that the car had attained the status of a classic or highly valued older automobile.  For all these reasons, the Court concludes that the car should be valued at its book value of $500, and that Plaintiffs should be compensated $500 for the property damage.

Pursuant to FED. R. CIV. P. 52(a), the Court presents its findings of fact and conclusions of law.

## FINDINGS OF FACT

I.  The following undisputed facts were set forth in the Final Pretrial Order:

   1.  The injuries at issue arose from an automobile accident on February 20, 2003, between an FBI-owned vehicle on official business and a car driven by Vincent Lilli in which JoAnn Lilli was a passenger.  As a result of the accident, Mrs. Lilli struck the interior of the car and suffered a laceration to her forehead which bled profusely at the time and which has since healed, leaving a permanent scar.

   2.  The motor vehicle insurance policy covering Plaintiffs' vehicle included the New Jersey limitation on lawsuit threshold option.

   3.  JoAnn Lilli attended six sessions of treatment with a psychologist after the accident.

   4.  Vincent Lilli incurred no compensable expenses for replacement of services for the period during which JoAnn Lilli was unable to perform all normal household activities.

II.  Based on the evidence presented at trial, this Court now makes the following findings of fact:

1. Plaintiffs Vincent Lilli and JoAnn Lilli, husband and wife, respectively, are citizens of the State of New Jersey.  On February 20, 2003, in Hackensack, New Jersey, Vincent Lilli was driving their 1979 Oldsmobile, with JoAnn Lilli as a passenger.  Their vehicle collided with a vehicle owned by Defendant United States of America, driven by Defendant's employee on official business.

2. As a result of the collision, Mrs. Lilli was thrown about the car and sustained head and left shoulder injuries.  Her head injury bled considerably.  Mr. Lilli observed her injuries and subsequent bleeding.

3. The collision caused a laceration of Mrs. Lilli's forehead.  After healing, a scar remains.  The scar impairs Mrs. Lilli's appearance, rendering her unsightly, misshapen, or imperfect.  The scarring has produced mild localized skin discomfort which continues.

4. Mrs. Lilli's injury to her left shoulder produced mild and temporary discomfort over a period of several months.

5. The collision caused Mrs. Lilli to experience mild and temporary emotional distress over a period of several months.

6. The damage to the car resulted in a total loss of the vehicle, which had a market value of $500.

7. Mr. Lilly was not injured physically in the collision, but he did observe his wife's injury as a bystander.  He did not experience severe emotional distress.

8. Prior to the accident, the physical marital relationship had been diminished by Mrs. Lilli's illness.  The accident caused a short-lived and minimal further interference with the relationship.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over this matter, pursuant to 28 U.S.C. § 1346(b), since the United States is the defendant and Plaintiffs allege a negligent act on the part of a government employee acting within the scope of his employment.  The FTCA provides a remedy against the United States for injuries caused by the "negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment."  28 U.S.C. §§ 1346(b), 2679(a).  In analyzing this claim, this Court must apply the law of the place of the occurrence, New Jersey.

2.       The parties accept this Court's personal jurisdiction.

3.       The parties accept that venue lies in this district.

4.       Defendant United States of America is liable to Plaintiffs for the damages caused by the accident.

5.       The accident caused an injury of significant scarring to Mrs. Lilli, thus qualifying as an exception to the limitation on lawsuit threshold in N.J.S.A. § 39:6A-8(a). Mrs. Lilli is entitled to sue for noneconomic loss causally related to all injuries sustained in the accident.

6.       The United States of America is liable to Plaintiffs for Mrs. Lilli's damages for pain and suffering in the amount of $22,000.

7.       The United States of America is liable to Plaintiffs for the property damage to their vehicle in the amount of $500.

8.       The United States of America is not liable to Plaintiffs for negligent infliction of emotional distress to Mr. Lilli.

9.       The United States of America is liable to Plaintiffs for Mr. Lilli's loss of consortium in the amount of $2,500.

An appropriate Order follows.

**ORDER**

**AND NOW**, this 25th day of January, 2007, after a bench trial, pursuant to FED. R. CIV. P. 52(a), judgment is entered in favor of Plaintiffs and against Defendant in the amount of $25,000.

**SO ORDERED.**

                                                 s/ Stanley R. Chesler
                                                 STANLEY R. CHESLER, U.S.D.J.